[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff and defendant marries in Wallingford, Connecticut, twelve years ago, on August 4, 1979. It was the first marriage for each of them. They have each resided continuously in this state for the past twelve months. Neither are recipients of public assistance from the State of Connecticut or of any governmental subdivision.
There are two children of their marriage: Christopher Soler, born on March 14, 1986, now five years of age, and David Soler, born on November 23, 1987, now three years of age. Christopher and David have been the focus of these five days of trial.
The threshold issues are fault and the best interests of the children. Plaintiff husband's complaint consists of two counts, the second claims "the defendant has committed adultery with another male." Husband pursued sole custody, claiming that his wife's adulterous behavior evidenced it was in the best interests of the children that he be their custodian. As the five day trial began, husband amended his prayer for relief, seeking "joint physical custody of the two minor children; and . . . that primary residence of the minor children be with him."
Testimony under oath elicits admissions from both husband and wife that each of them had entered into adulterous relationships. Plaintiff husband admits to a sexual relationship with a women after approximately two years of marriage. Defendant wife admits to a sexual relationship with a man approximately two years ago, after about ten years of marriage. Each initially denied the relationship. CT Page 7646
Wife testifies that their marital relationship was not a close one, either sexually or emotionally. She testified to one physical intimacy during the honeymoon week, sporadic physical intimacies thereafter: they were friends rather intimates. His early adultery, together with their lack of intimacy, created a marriage that was not a good one, she claimed. Husband took a job in Parsippany, New Jersey, for a year, moving into his parent's home there. Wife testified they discussed divorce a year before their first child was born, going so far as to talk about selling their home and buying two condominiums.
Husband testifies to a fine marriage, "very happy, very proud", "the American dream sort of thing", the joy of which was suddenly shattered by his wife's unfaithfulness in December of 1989. He claims her affair caused the breakdown of their marriage. Plaintiff husband testifies to many incidents and circumstances in an efforts to substantiate and dramatize his wife's unfaithfulness: phone calls, changes in wife's schedule, birth control pills, confrontations, gifts, his private investigator, arguments, movement of jewelry, a change in automobile title, physical abuse, derogatory remarks and other indications of disaffection. Wife denied many of the incidents and offered explanations of others. She did not deny the adultery.
In those areas where their testimony was in conflict, the court finds Wife's testimony generally to be the more credible. From the testimony offered, the court finds each admitted adulterous behavior to have been a symptom of an earlier breakdown of the marriage rather than the sudden cause of that breakdown.
Mr. Soler's infidelity, though obviously effecting the marriage, did not result in any destructive behavior by Mrs. Soler. The marriage moved on. Witnesses, including Mr. Soler, testified to the idyllic appearance of their relationship.
Mrs. Soler's infidelity resulted in outbursts of angry behavior by Mr. Soler. He shifted $20,000 of marital funds to his sister and then to his mother, changing the addresses of marital accounts to his parent's home in Cranbury, New Jersey. Item disappeared from his wife's locked automobile and later reappeared in the family home. He examined her pocketbook. He removed china, silverware and Toby jugs from the family home, depositing them in his parents' home. He called the State Police emergency telephone number at least three times, claiming physical abuse by his wife and urging her arrest. The children were present on a number of those occasions. He withdrew $10,000 from an equity line of credit without notice to his wife, resulting in a second mortgage encumbrance against the family home, and used the proceeds to pay his attorney's retainer, pay off the loan on his Volkswagen, hire a private investigator and purchase gifts. He placed an advertisement in the Meriden Record advising he would "not be responsible for for any bills contracted for by any one other than CT Page 7647 myself." The newspaper's circulation was not in the town where his wife lived, but in the town where she worked and where her parents lived. His sheriff served his wife with a subpoena at her place of employment rather than in the privacy of her home. He called his wife a whore in the presence of their children. He stopped paying the mortgage on the family home, resulting in written warnings from the mortgage holder. He became involved in telephone tapping. He removed substantial amounts of furniture from the family home under circumstances characterized by Superior Court Judge Frank Meadow as "spiteful" and "a blatant disregard for court order." The furniture was not returned for two months, forcing the defendant wife to obtain a court order. He paid no alimony or child support until a court order was entered.
He was driven by anger. His anger fueled a parade of motions, a succession of courtroom confrontations and a five day trial. His anger consumed a disproportionate portion of the time our system has available to service the community, inconvenienced a number of peripherally related private citizens and institutions subpoenaed as witnesses, and resulted in an escalation of attorneys' fees and other adversarially focused costs that have and will cause meaningful fiscal problems for both of the parents and will ultimately impact their children.
This court does not find it to be in the best interests of the children to place their father in a position of custodial authority while he is fueled by such anger. With the passage of time, with professional assistance, with a willingness to recognize the role he played in the dissolution of his marriage and with the gain of some respect for the mother of his children, perhaps he can become an appropriate joint custodian of those children. If it is to be truly effective, Mr. Soler's counselling should include his wife, so that both he and the counsellor have the benefit of more than Mr. Soler's viewpoint. Mrs. Soler testifies that she would consider participating. If he wishes to encourage her participation, Mr. Soler is urged to hire a counsellor his wife approves and to schedule the sessions for mutual convenience.
Mr. Soler admitted his wife had been a good mother prior to her adulterous relationship: "She has no impediment as a mother." Nor was the court offered any credible testimony of current maternal shortcomings. A number of Mr. Soler's witnesses testifies to how well adjusted the children appeared to them.
Both of the principals testified to the difficulty each had in communicating with the other.
It was the recommendation of the Family Services Unit that custody be awarded to the mother. The report, written by Allen B. Rubin notes, "Mr. Soler has expressed a great deal of anger and CT Page 7648 resentment towards his wife which may have contributed to the escalating warfare and litigation in this case creating an impediment of obtaining a fair solution to the present custody problem.
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage had broken down irretrievably, a decree of dissolution shall enter and the following orders shall apply:
1. CUSTODY
a. Defendant mother is awarded sole custody of the minor children, Christopher and Daniel.
b. Neither parent shall do anything which may estrange either of the children from the other parent or injure the opinion of either child as to their mother or their father, or act in such a way as to hamper the free and natural development of either children's love and respect for the other parent, or allow others within their sphere of influence to do so.
c. The parties shall have reasonable access to both children while Christopher and David are with the other parent, including free access by mail and free access by telephone for reasonable periods of time during reasonable hours of the day and evening.
2. VISITATION
a. Plaintiff father shall enjoy reasonable rights of visitation.
b. In a repeating four week cycle, visitation shall be the first week with father from Thursday anytime after school to Friday morning at school. If there is no school for both children on Friday, and if father is available to be with the children, until Friday at 5 P.M.
c. Second week, with father from Friday after school until Sunday evening at 6 P.M.
d. Third week, with father from Saturday at 10 A.M. to Sunday at 6 P.M.
e. Fourth week, with father from Friday after school to Sunday at 10 A.M.
f. All legal holidays shall be alternated between mother and father, beginning Columbus Day of 1991. Mother shall choose the schedule, with the understanding that her choices will be reversed the following year unless both parties agree to a modification. Thanksgiving shall be a four day holiday, from Thursday morning until CT Page 7649 Sunday at 6 P.M. Christmas shall be divided into Christmas Eve and Christmas day.
g. When a legal holiday falls on a Monday, the parent enjoying that weekend shall have the Monday as well as the weekend.
h. Father shall have the childrens' winter school vacation, generally occurring during February.
i. Mother shall have the childrens' spring school vacation, generally occurring during April and May.
k. Father shall have up to three additional weeks of his vacation time with the children upon at least sixty days notice. Two of the weeks may be consecutive.
l. Christmas school vacation week shall be divided between the parties. (per Steinberg J.;).
4. MODIFICATION OF VISITATION
a. The parent's personal and business commitments, as well as the commitments of the children, may, from time to time, make modifications or changes in this schedule desirable or necessary.
b. Both parents shall be reasonable and flexible both with respect to requesting and consenting to such adjustments.
c. In the event of a dispute, defendant mother shall make the final decision.
d. If the defendant mother imposes a modification upon the visiting parent, there shall be reasonable substitution for the time missed made available within a short time thereafter.
e. Both parents shall give as much advance notice as possible of any anticipated changes in the schedule.
5. COMMUNICATION
a. Parents shall communicate directly and not through either child.
6. VISITATION EXPENSES
a. any expense or cost involved in exercise of visitation rights shall be that parent's responsibility and will be paid for by that parent.
b. Any such cost or expense shall be separate and apart from, CT Page 7650 and in addition to, any and all payments to be made for the support of the children.
c. The non-custodial parent shall provide and pay the costs of all transportation incurred in connection with visitation and all the costs and expenses of the child incurred during visitation, including the cost of food and lodging.
d. The non-custodial parent shall not be entitled to any deduction from any payments to the custodial parent on account of moneys expended by him during the exercise of his custodial rights.
7. CHILD SUPPORT
a. For purposes of child support guidelines the court finds defendant mother's net income to be $615.89 per week ($890 gross less $165 withholding, $7.42 union dues, $95 child care and $7.69 Hosp Copa) and plaintiff father's net income to be $751.41 ($986.43 gross less $143.66 withholding, $74.13 FICA and $20.89 insurance) for a total net income of $1370. The guidelines result in a recommended contribution by the father of $263 which this court finds to be both equitable and appropriate.
b. Said order of child support shall be retroactive to July 12, 1991.
8. MEDICAL INSURANCE
a. Both parents have offered, and thus both parents are directed, to provide medical insurance for the benefit of the minor children as provided at their place of employment.
b. All uninsured medical, dental, prescription, eye care, mental health, and all other health related expenses shall be divided equally between the parents.
c. C.G.S. 46b-84(c) shall apply.
9. LIFE INSURANCE
a. Each parent shall maintain $100,000 of life insurance, naming the other parent as irrevocable beneficiary thereof until both children are eighteen years of age, such sum being intended for the benefit of the children of the marriage.
b. Each parent shall furnish the other, on their request, no more than once each calendar year, proof that the life insurance exists in the specified amount and that the beneficiary of said insurance is as required by this order. CT Page 7651
c. If $100,000 is not received by the beneficiary at the time of death, the unpaid balance shall constitute a charge against the estate and shall become an indebtedness of the estate in favor of the beneficiary.
10. TAX EXEMPTIONS
a. Plaintiff will be entitled to claim Christopher as his tax exemption, provided he is current with all the payments called for in these orders as they may be modified from time to time.
b. Defendant mother will be entitled to claim David as her tax exemption.
11. ALIMONY
a. Defendant mother shall receive alimony of $1 a year for six (6) years.
b. Said alimony shall be non-modifiable as to amount or term except only in the event of a medically certifiable inability to pursue her regular employment or employment equally renumerative.
c. Alimony shall terminate upon death of either party or the remarriage of defendant. (per Steinberg, J.).
12. 5 LOLLY LANE, OXFORD, CONNECTICUT
a. Husband shall forthwith transfer and convey to wife by quit claim deed all of his right, title and interest in and to 5 Lolly Lane, Oxford, Connecticut, free of any claim thereto by husband.
b. Wife shall thereupon be solely responsible for the existing first and second mortgages thereon and all mortgages liens and encumbrances thereon, including all taxes. Wife shall hold husband harmless from any claim, demand or suit by anyone holding or claiming a mortgage, lien or encumbrance on said premises.
c. The court finds the family home to have a fair market value of $210,000 and mortgages of $97,694, creating a total equity of $112,306. Husband's share of the total equity is 45% or $50,537.
d. Husband's unilateral use of the great majority of the equity credit second mortgage proceeds, his transfer of $20,000 of marital funds to his family, his use of the $8000 in law suit proceeds, combined with this court's order that he retain his profit sharing plan, ESOP and 401K totaling $20,874 effecting balances the $50,537 that would otherwise be due him. Husband shall receive no payment of his share of the family home.
13. OTHER ASSETS CT Page 7652
a. Each of the parties shall retain their automobiles.
b. Each of the parties shall retain their IRAs.
c. The court finds wife's Teacher's Retirement Plan to be a program created to compensate educators for their inability to participate in social security. Each shall keep their own program.
d. Husband shall receive the following personal property from the family home:
 1 bedroom set, either master bedroom or Christopher's with mattress and box spring 1 bedroom lamp 2 floral prints from the master bedroom 1 kitchen table and 4 oak chairs Microwave oven (from basement) 1 den sleeper sofa 1 den pine coffee table, nest of tables and side chest 1 den pine rocker, pine mirror, lamp and floor lamp Bridge lithograph, farm landscape water color and 2 oriental wall prints 6x9 hooked rug couch and 3 chairs from the basement Caloric grill
e. The parties shall each retain ownership of all those items presently in their possession.
14. GOVERNMENT BONDS
a. Government bonds with a total face value of $34,425 shall be held in trust by the defendant mother for the benefit of the minor children, preferably for their college education, but should an emergency arise, they may be used for other child purposes, if necessary.
b. Mother is empowered to change the investment vehicles from time to time, utilizing prudent forms of investment.
c. Father is directed to forthwith sign the necessary documentation to enable mother to change investment vehicles in the future.
15. DEBTS
a. The parties shall share the CNB Visa/Mastercard joint debt equally. Each shall pay their share thereof no less monthly, including interest as it accrues. CT Page 7653
b. Plaintiff shall be responsible for the debts to Carmody and Torrence, American Express and David and Mary Soler.
c. Defendant shall be responsible for the debts to Union Trust, Ohio Bank and G. Fox.
16. ATTORNEY FOR THE MINOR CHILDREN
a. Attorney Stark has submitted a bill for $5400 for his services as attorney for the minor children. The court approves that bill.
b. Each of the parties shall pay one half of the bill or $2700.
c. The bill is to be paid at the rate of no less than $225 per month or $52 per week.
17. ATTORNEYS FOR THE PARTIES
a. Having specifically considered 46b-62 and 46b-82, the evidence presented and the respective needs and abilities of the parties to pay, this court directs the plaintiff to pay $5000 of the defendant's attorney's fees. Unless he chooses to pay the principal balance sooner, plaintiff shall pay the $5000 in 25 equal and consecutive monthly payments of $200 each beginning twelve months from this date.
18. APPEAL
All foregoing orders with respect to custody and visitation shall stand and operate as interim orders of the court during the pendency of any appeal.
Joseph L. Steinberg, Judge